## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**DELBERT KEYES**                                                                              **PETITIONER**

**V.**                                                        **CIVIL ACTION NO. 1:22CV228-HSO-LGI**

**SUPERINTENDENT BRAND HUFFMAN**                                  **RESPONDENT**

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Delbert Keyes seeks habeas corpus relief pursuant to 28 U.S.C. § 2254.

Respondent moves to dismiss his petition as time-barred under 28 U.S.C. § 2244(d) of

the Antiterrorism and Effective Death Penalty Act of 1996.  After a review of the record

and the applicable law, the undersigned recommends that the petition be dismissed with

prejudice.

Following his convictions for robbery, kidnapping, and forcible sexual intercourse

of a 77-year-old victim in 2017, Keyes was sentenced as a habitual offender to serve

three life sentences without parole in the custody of the Mississippi Department of

Corrections.  The procedural history outlined in detail in the parties' pleadings will not be

repeated in depth here, but the relevant facts are accurately described in the state court's

opinion and are incorporated as follows.

During the late evening of October 18, 2015, seventy-seven year old Liza[1] was at

home in Gulfport, Mississippi, when her dog began barking at something outside; so, she

went to investigate.  A man came up behind her and "clamped" her arm, twisting it

---

[1] To protect the identity of the victim, the state court used a fictitious name.

behind her back.  He forced her inside to her bedroom where he tied her arms behind her

back with handkerchiefs and forced her to lie face down with a pillow over her head.  The

man demanded money.  Upset after discovering only $60 in Liza's purse, the assailant

took off Liza's nightgown and attempted to penetrate her with his penis, using a

handkerchief to cover it.  While he was attempting to have intercourse with Liza, he took

off his leather jacket.  When he finished with his assault, he began looking for jewelry.

Liza told him there was an additional $100 hidden in her purse, which he took.  The

attacker exited the home, leaving behind his jacket, which Liza had kicked under the bed.

Liza ran to her neighbors' home to contact the police.  She described the man as short and

heavyset.  Liza was taken to the hospital for an examination, and the perpetrator's jacket,

Liza's nightgown, and her handkerchiefs were sent for DNA analysis.

A few days later, Leonard Bankston, a local handyman who had worked for Liza,

heard of the assault and reported to the police that he suspected that his neighbor, Keyes,

was the perpetrator.  Following up on Bankston's tip, Detective Christopher Werner

located Keyes at his sister's apartment.  The detective noted that Keyes was a "[s]horter,

heavier set individual," matching Liza's description of her assailant.  Detective Werner

confiscated a cell phone lying next to Keyes on the couch.  Although Keyes denied it was

his phone, it was later confirmed that Keyes bought the phone the day after Liza's assault.

Examination also revealed that the phone was used to search for news regarding the

attack and for information on bus tickets.  Police also talked with Keyes's sister, Debbie

Faulkner, who said that on the evening of the attack, her brother had left her home at

10:30 p.m. and returned at 1:30 a.m. without his jacket.  Faulkner's home was only a

couple of blocks from Liza's house.  Faulkner identified the recovered jacket as Keyes's.

Yet when interviewed by police, Keyes claimed that he never left his sister's apartment

that evening and had gone to bed by 9:00 p.m.  Police took Keyes into custody and

collected DNA through a buccal swab.

On May 23, 2016, Keyes was indicted for Count I, robbery; Count II, kidnapping;

and Count III, forcible sexual intercourse, as a habitual offender under Mississippi Code

Annotated section 99-19-81 (Rev. 2015).  The State moved to amend the indictment to

charge Keyes under section 99-19-83 on November 30, 2016.  The trial court granted the

motion.

A jury trial was held in Harrison County Circuit Court on February 21-23, 2017.

Liza testified about the events that occurred during the attack as stated above.  Gulfport

Police Officer Jason Vincent testified about his investigation of the crime scene.  He

observed jewelry on top of the bed and a "black leather coat underneath the bed with two

handkerchiefs near it."  He also observed another handkerchief tied in a knot with hair in

it and noted that the condition of the room suggested that "somebody was rummaging,

attempting to locate items."

Tobie Nix, the emergency-room nurse who treated Liza on the night of the attack,

stated that Liza had "multiple bruising to her upper body, her wrist, her neck, face, some

abrasions that were current."  The witness did acknowledge that some of the bruising

reportedly occurred before the attack.  Dr. Kathy Keimig, the treating emergency-room

physician, was admitted as an expert in emergency-room medicine.  She noted that Liza

was "very upset, tearful, [and] was very anxious."  During her examination, Dr. Keimig

3

noted fresh bruising and abrasions around Liza's face, arms, and wrists.  She also testified

that Liza had bruising and abrasions around and inside her genital area and rectum, which

were consistent with a sexual assault.

Bankston said that he knew Keyes and had sometimes driven him to the store or to

the scrap yard.  On cross-examination, counsel asked him why he thought Keyes had

perpetrated the attack on Liza.  Bankston said he did his own investigating when he heard

of the assault and "did enough searching to know that [Keyes] had done this same

particular thing [twenty] years ago."  Defense counsel objected and moved to strike the

response.  The trial judge said that the witness was merely responding to the defense's

question; so, the testimony was allowed.

Kathryn Rogers, a DNA analyst with Scales Biological Laboratory, testified as an

expert in DNA analysis.  She took samples from the leather jacket to create a mixture

profile.  The DNA analysis revealed that 99.99% of the world's population could be

excluded from the mixture profile, but Keyes could not.  Rogers also conducted Y-

chromosome testing of the handkerchief.  While 99.93% of the male population could be

excluded, Keyes could not.

The State rested, and the defense moved for a directed verdict, which the trial

judge denied.  Keyes testified, claiming that on the day of the assault, he had been

watching football all day.  He admitted that he left home about 10:15 p.m. but claimed he

went to a trailer park a few blocks away and drank with some acquaintances around a

"pit."  Keyes said he took off his jacket and accidentally left it on a chair.  When he got to

his sister's apartment, he realized he left the jacket and went back, but no one was there. He denied telling police he had been home all evening.

The jury found Keyes guilty on all three counts, and the trial judge sentenced him as a habitual offender under section 99-19-83 to life without eligibility for parole in the custody of the MDOC for each count, with the sentences to run consecutively. Keyes filed a motion for a new trial, which the trial court denied. Aggrieved, Keyes appealed asserting the trial court erred and the verdict was against the overwhelming weight of the evidence.

Relevant here, the Mississippi Court of Appeals affirmed Keyes's convictions and sentences on appeal, and after withdrawing its initial mandate, denied his subsequent motion for rehearing on April 23, 2019, and re-issued its mandate on May 14, 2019. *Keyes v. State*, No. 2017-KA-01214-COA, 2018 WL 6323115, at *1–2 (Miss. Ct. App. Dec. 4, 2018). Several attempts by Keyes to seek certiorari review of the decision by the Mississippi Court of Appeals were denied as untimely by the Mississippi Supreme Court because Keyes failed to seek certiorari review within the requisite 14-day period, by May 7, 2019.

On November 20, 2019,[2] Keyes filed a "motion to dismiss his indictment" in the Mississippi Supreme Court. The motion was construed as Keyes's first motion for post-

---

[2] Though not signed, Keyes's first post-conviction motion is dated November 20, 2019, and was stamped "filed" in the Mississippi Supreme Court on November 25, 2019. Under state law, an inmate's post-conviction motion is considered filed when it is delivered to prison authorities for mailing. *Sykes v. State*, 757 So. 2d 997, 1000–1 (Miss. 2000); *Gaston v. State*, 817 So. 2d 613, 616 (Miss. Ct. App. 2002). *See also Causey v. Cain*, 450 F.3d 601, 606–07 (5th Cir. 2006) (holding application of the "mailbox rule" to state court filings is a matter of state law which the federal courts

conviction relief and denied by that court on April 7, 2020.  Over a year later, Keyes filed

an application in the trial court to proceed with a second motion for post-conviction

relief.  The motion was denied as successive and without merit by the Mississippi

Supreme Court on November 9, 2021.  Several attempts by Keyes to seek rehearing in

the Mississippi Supreme Court and a request for certiorari review in the United States

Supreme Court from June 2021 through May 2022 were all denied.  On August 30, 2022,

Keyes filed the instant petition for federal habeas corpus relief contending that his

petition was timely.

## Discussion

The Antiterrorism and Effective Death Penalty Act (AEDPA) "introduced both

'simple logic' to the federal habeas landscape and uniform rules for federal courts to

apply." *Wallace v. Mississippi*, 43 F.4th 482 (5th Cir. 2022) (quoting *Smith v. Titus*, 209

L. Ed. 2d 488, 141 S. Ct. 982, 987 (2021)). "Namely, it implemented a host of greatly

needed procedural requirements for petitioners seeking habeas relief." *Id.* Among them is

the one-year statute of limitations on state prisoners filing a federal habeas petition.

Under 28 U.S.C. § 2244(d)(1), AEDPA provides that the statute of limitations will run

from the latest of:

> (A) the date on which the judgment became final by the
> conclusion of direct review or the expiration of the time for
> seeking such review;

---

will respect).  Keyes's first state post-conviction motion is therefore considered filed on November 20, 2019.

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(d)(1)(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1) and (2).  Thus, unless the narrow exceptions of § 2244(d)(1)(B)-(D) apply, a federal habeas petition must be filed within one year of the final judgment of the defendant's conviction, subject to tolling for the period when a properly filed motion for post-conviction relief is pending in state court.  *See Madden v. Thaler*, 521 F. App'x 316 (5th Cir. 2013).  AEDPA's statute of limitations period may also be equitably tolled if a petitioner shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing."  *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotations and citations omitted); *see also Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000) (equitable tolling may apply to extend the one-year statute of limitations period, but only in rare and exceptional circumstances).

Applying these standards here, Keyes's conviction became final on May 7, 2019, 14 days after the Mississippi Court of Appeals denied his request for rehearing on April 23, 2019.[3]  *Wallace v. Mississippi*, 43 F.4th 482, 497 (5th Cir. 2022) (citing *Roberts*, 319 F.3d at 694 (statute of limitations begins to run when time for seeking further direct review expires).  Though his attempts to seek discretionary (certiorari) review were dismissed by the Mississippi Supreme Court as untimely, he is still credited with the 14-day time-period permitted under Mississippi law for doing so.  *Fairley v. Cain*, No. 1:21-CV-277-HSO-RHWR, 2022 WL 2966884, at *1 (S.D. Miss. July 27, 2022) (citing Miss. R. App. P. 17(b) ("[a] party seeking review of a judgment of the Court of Appeals must first seek review of that court's decision by filing a motion for rehearing in the Court of Appeals. If a party seeks review in the Supreme Court, a petition for a writ of certiorari for review of the decision of the Court of Appeals must be filed in the Supreme Court and served on other parties within fourteen (14) days from the date of entry of judgment by the Court of Appeals on the motion for rehearing, unless extended upon motion filed within such time.").  Thus, with no equitable or statutory tolling, Keyes was required to move for state post-conviction relief before AEDPA's one-year statute of limitations expired on May 7, 2020.

---

[3] *See also Watts v. Brewer*, 416 F. App'x 425, 429 (5th Cir. 2011) (observing that "when a judgment becomes 'final' for purposes of subpart (d)(1)'s triggering provision, *Roberts* held AEDPA's limitations period begins to run on the last day, under state law, that petitioner could seek direct review of the judgment. *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003)–95). Consequently, our court held the mandate's issuance date on direct review was irrelevant in calculating when AEDPA's one-year statute of limitations begins to run").

As noted, the record reflects that Keyes did indeed file his first post-conviction motion before that date on November 20, 2019, and it was denied on April 7, 2020. Accordingly, he is credited with 139 days of statutory tolling for the time the motion was pending, extending AEDPA's deadline from May 7, 2020 to September 23, 2020.   Even so, as Respondent points out, Keyes has no right to any additional statutory tolling for his second post-conviction motion because it was filed after the AEDPA deadline had passed.   *See Scott*, 227 F.3d at 263 ("state habeas application did not toll the limitation period under § 2244(d)(2) because it was not filed until **after** the period of limitation had expired") (emphasis in original)); *Villegas v. Johnson*, 184 F.3d 467, 472 (5th Cir. 1999) (expired limitations period cannot be revived by filing a state habeas petition). Accordingly, with no additional tolling, the instant petition filed more than almost two years after the deadline passed is untimely.

Though Keyes at first denied that his petition was untimely, he has claimed in multiple filings in response to the motion to dismiss that he is entitled to equitable tolling because of his *pro se* status, ignorance of the law, and MDOC's failure to provide personnel trained in the law.   He also appears to contend that any legal assistance he did receive was delayed, citing a lockdown at MDOC in April 2019 and the death of two inmates in June 2019.   But as noted *supra*, a petitioner "must demonstrate a causal relationship between the extraordinary circumstance[s] and his delay, a showing that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances."   *Smith v. Vannoy*, 848 F. App'x

624, 628 (5th Cir. 2021), *cert. denied sub nom. Smith v. Hooper*, 212 L. Ed. 2d 19, 142

S. Ct. 1130 (2022) (internal quotations and citation omitted).

Contrary to his assertions, Keyes's unfamiliarity with the legal process does not

constitute a rare and exceptional circumstance that warrants equitable tolling.  The Fifth

Circuit has repeatedly held that the inability to obtain research materials, ignorance of the

law, or proceeding *pro se* are not rare and exceptional circumstances that warrant tolling

of the AEDPA limitations period as these are typical of those bringing a § 2254 claim.

*See Scott*, 227 F.3d at 263 & n. 3 (5th Cir. 2000); *Felder v. Johnson*, 204 F.3d 168, 171

(5th Cir. 2000); *Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir. 1999).  Further, every

inmate in the custody of the Mississippi Department of Corrections has access to legal

assistance, case law, and other legal materials through the Inmate Legal Assistance

Program, ("ILAP"), which was substituted for hardback libraries in 1997.  *See Neal v.*

*Bradley*, No. 2:05CV67-M-B, 2006 WL 2796404 (N.D. Miss. Sept. 25, 2006)

(referencing the affidavit of Gia N. McLeod, Director of the ILAP).  Through ILAP,

inmates can submit a research request related to any issues relevant to challenging his

conviction and sentence.  Upon request, they also receive a post-conviction packet

containing an overview of federal habeas, including information regarding the one-year

statute of limitations period.  *Neal*, 2006 WL 2796404 at *3-4.  Keyes does not allege

that he was denied access to ILAP.

Nor does Keyes explain how the alleged events in April and June 2019 at MDOC

prevented him from timely filing his petition.  He does not contend, for example, that he

was in lockdown, nor does he state whether inmates could access the ILAP or receive

legal assistance during the lockdown.  *Cardona v. Davis*, 770 F. App'x 179, 181 (5th Cir.

2019);  *Lovett v. Hall*, No. 5:19CV33 DCB-LRA, 2020 WL 6792688, at *4 (S.D. Miss.

Aug. 7, 2020), *report and recommendation adopted,* No. 5:19-CV-33-DCB-LRA, 2020

WL 5569586 (S.D. Miss. Sept. 17, 2020) (observing that affidavit from EMCF official

noted that "if an inmate notifies [the Inmate Legal Assistance Program] ILAP that he has

a deadline during a lockdown, then ILAP officials would come to an inmate's cell during

a lockdown to collect documents for mailing").  He also does not state how long the April

2019 lockdown, which would have occurred before the statute of limitations began to

run, lasted.  The record also reflects that despite the purported events at MDOC, Keyes

filed many post-conviction pleadings, including his first conviction motion, between

January 2019 and January 2020.  That Keyes managed to do so undermines his claims

that a lockdown, or any other condition of confinement, impeded his ability to timely file

his petition.[4]

Moreover, Keyes had notice that the Mississippi Supreme Court rejected his first

post-conviction motion in April 2020.  Yet despite ample time remaining in the

limitations period, he waited over two years to file the instant petition.  The Fifth Circuit

has acknowledged that there are "no bright-line rules" in equitable tolling, but "prisoners

who were aware that their state post-conviction proceedings were no longer pending and

---

[4]  Keyes has submitted several documents concerning the conditions of confinement at MDOC. Even so, he does not demonstrate, or otherwise assert, that any specific condition impeded his ability to time file the instant petition.  To the extent that he intends to challenge the conditions of confinement, such claims are properly brought under 42 U.S.C. § 1983. *Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir. 1997).

yet waited to file federal habeas petitions between four and six months after the limitation period began did not exercise reasonable diligence." *Smith*, 848 F. App'x at 629 (citing *Palacios v. Stephens*, 723 F.3d 600, 606 (5th Cir. 2013) (collecting cases)). Keyes's delay far exceeded this time frame, and he has not explained his failure to file sooner. Accordingly, for the reasons stated, he has failed to show that he exercised reasonable diligence in pursuit of his federal habeas claims, or that some extraordinary circumstance prevented him from filing before the expiration of the statute of limitations.

Along with his equitable tolling claims, Keyes asserts that he is actually innocent and requests an evidentiary hearing. Actual innocence itself is not a free-standing ground for habeas corpus relief, however. *Floyd v. Vannoy*, 894 F.3d 143, 155–58 (5th Cir. 2018); *Reed v. Stephens*, 739 F.3d 753, 766 (5th Cir. 2014). Actual innocence claims provide only "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993). To overcome the expiration of the AEDPA statute of limitations by showing actual innocence, the new evidence must be sufficient to persuade the district court that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin v. Perkins*, 569 U.S. 383, 133 S. Ct. 1924, 1927, 185 L. Ed. 2d 1019 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)).

Keyes has not met this high burden here. Apart from asserting his innocence, he has not presented any new, reliable evidence to demonstrate more likely than not that, had his actual innocence claims been presented at trial, a reasonable juror would not have

convicted him.  Nor has he shown that no reasonable juror would have convicted him

based on "all of the evidence, old and new, incriminating and exculpatory, without regard

to whether it would necessarily be admitted under rules of admissibility that would

govern at trial." *Reed*, 739 F.3d at 767.  Rather, Keyes challenges the weight of the

evidence supporting his conviction and posits, without any evidentiary support, that there

may have been police misconduct or negligence in failing to investigate whether evidence

was planted, or witnesses lied to frame him.

To make a ***credible*** actual innocence claim, however, a petitioner must: (1) present

new reliable evidence, such as exculpatory scientific evidence, trustworthy eyewitness

accounts, or critical physical evidence; (2) that was not presented at trial; and (3) must

show, that in light of this new evidence, it is more likely than not, that no reasonable juror

would have found petitioner guilty beyond a reasonable doubt.  *House v. Bell*, 547 U.S.

518, 537, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006), *citing Schlup*, 513 U.S. at 299.

"Evidence does not qualify as 'new' under the *Schlup* actual-innocence standard if 'it was

always within the reach of [petitioner's] personal knowledge or reasonable

investigation.'" *Tyler v. Davis*, 768 F. App'x 264, 265 (5th Cir. 2019) (quoting *Hancock

v. Davis*, 906 F.3d 387, 390 (5th Cir. 2018)).

Keyes submits several excerpts from his state court record,[5] previously known or

otherwise available to the defense, to support his theory that he was framed, possibly, he

---

[5]  These excepts include, among other things, portions of the DNA's expert testimony about the lack of seminal fluid found on the jacket and handkerchiefs, both of which were highlighted by the defense at trial. Keyes also attaches portions of his police interview purportedly to show that he has consistently denied that he committed the crime.  As noted, however, such evidence does not constitute new and reliable evidence sufficient to establish a "credible gateway claim."  Though no

believes, in retaliation for his previous crimes.[6]  But he has not submitted any

exculpatory evidence or eyewitness accounts supporting this theory that make it more

likely than not that no reasonable juror would have convicted him.  As the state court

explained on direct appeal:

> [T]here was ample evidence in favor of Keyes's guilt. Keyes's sister
> testified that he left her house wearing his leather jacket around the time of
> the attack, and he returned a few hours later without it. She identified the
> jacket recovered from Liza's home as Keyes's, and he acknowledged that
> the jacket found at the scene was his. He matched Liza's physical
> description of the assailant. A forensic examination of Keyes's cell phone
> showed that it was purchased the day after the crime and that he had
> accessed several news stories about the attack and searched for bus tickets
> out of town. DNA evidence was recovered from the jacket and
> handkerchiefs and compared to Keyes's DNA sample. While over ninety-
> nine percent of the world's population could be excluded, Keyes could not
> be ruled out as the source of the DNA recovered from the scene.

---

seminal fluid was found, the expert testified that DNA testing of the Y chromosome present on the handkerchiefs and jacket, revealed that 99.93% of the world's male population could be excluded as a contributor to the DNA, but Keyes could not be excluded.

[6] Liberally construed, as a motive for framing him, Keyes offers nothing more than his unsubstantiated allegation that Bankston, who lived next door to Keyes's sister, may have had a girlfriend who may have been related to one of his previous victims.  A petitioner's unsubstantiated allegation in insufficient to warrant equitable tolling based on actual innocence, however.  *See Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value."). *See also, e.g.*, *Johnson v. May*, No. 1:19-CV-02636-SO, 2022 WL 18157544, at *14 (N.D. Ohio Nov. 16, 2022), *report and recommendation adopted,* No. 1:19 CV 2636, 2023 WL 130841 (N.D. Ohio Jan. 9, 2023) ("Because Johnson provides no new, reliable evidence beyond his own conclusory, speculative, and unsubstantiated assertions regarding his trial counsel's alleged substance abuse, Johnson has failed to demonstrate his actual innocence."); *Parks v. Cline*, 786 F. App'x 759, 763 (10th Cir. 2019) (petitioner's conclusory, self-serving and unsubstantiated allegation that his wife committed perjury when she testified against him at trial "fail[ed] to provide any evidence affirmatively demonstrating his innocence," and was not enough to satisfy the *Schlup* standard).

*Keyes*, 2018 WL 6323115, at *3. Keyes counters that he does not know how his leather jacket ended up in the victim's home, or how gloves, which fit the description of those worn by the attacker, ended up at his sister's home unless, however, they were planted. But even if the gloves and DNA evidence on the jacket were excluded from consideration, Keyes has yet to explain the presence of his DNA on the handkerchiefs. Similarly, contrary to his initial claims that he never left his sister's house that evening, Keyes asserted for the first time at trial that he left his jacket behind while visiting friends at a nearby trailer park while the crime was being committed. His jacket, he now contends, must have been discovered and planted at the crime scene. Yet, despite serving as a potential alibi, Keyes did not call any of these witnesses to testify on his behalf at trial, nor has he produced affidavits from them to support his actual innocence claim. Because Keyes fails to support his actual innocence gateway claim with new reliable evidence, the instant petition should be dismissed as time barred.

As for Petitioner's request for an evidentiary hearing, 28 U.S.C. § 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and, the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B). The undersigned submits that Keyes has not made this showing here.

In sum, Keyes has not established a credible gateway claim sufficient to overcome

the one-year period of limitation.  He has also failed to show that he exercised reasonable

diligence in pursuit of his federal habeas claims or that extraordinary circumstances

existed to prevent him from timely filing his petition.  None of AEDPA's other statutory

exceptions apply here, and none of Petitioner's remaining arguments are relevant or

warrant tolling of the statute of limitations.  Without any evidence warranting additional

tolling, Keyes's habeas petition is barred by the statute of limitations and should be

dismissed with prejudice, without evidentiary hearing.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States

District Courts for the Northern District of Mississippi and the Southern District of

Mississippi*, any party may serve and file written objections within 14 days after being

served with a copy of this Report and Recommendation.  Within 7 days of the service of

the objection, the opposing party must either serve and file a response or notify the

District Judge that he or she does not intend to respond to the objection.

The parties are notified that failure to file timely written objections to the proposed

findings, conclusions, and recommendations contained within this report and

recommendation, shall bar that party from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court, except

upon grounds of plain error.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended,

effective December 1, 2009); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

      Respectfully submitted on July 28, 2023.

s/ LaKeysha Greer Isaac
UNITED STATES MAGISTRATE JUDGE
